IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | SA-18-CR-00064-OLG |
| vs. | § § | |
| (1) PAUL FLORES., | § § § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss [#29], which has been referred to the undersigned for a report and recommendation. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be denied.

**I.  Background**

Defendant Paul Flores is under indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The indictment alleges that Defendant was found to be in possession of a semiautomatic pistol after being convicted of a crime punishable for a term of imprisonment exceeding one year. Defendant's criminal history includes multiple felony convictions, including a federal drug trafficking conviction in 2010, a federal conviction in 2004 for felon in possession of a firearm, and a 1991 conviction for voluntary manslaughter. Defendant now moves to dismiss the indictment on the basis that 18 U.S.C. § 922(g)(1) violates the Second

1

Amendment under the principles set forth by the Supreme Court in its recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, ___ U.S. ___, 142 S. Ct. 2111 (2022).

## II.  Legal Standard

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1).  If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion.  *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005).  Defendant's motion to dismiss the indictment states that Defendant is bringing both a facial and factual challenge to a federal statute.  However, the motion does not require resolution of any disputed facts related to Defendant's indictment or prior convictions.  The Court may therefore issue a decision on the motion without any further factfinding.

The undersigned notes that Defendant requests a hearing on his motion to present expert testimony on the historical tradition of firearm regulation with respect to convicted felons. Because the undersigned finds, as set forth herein, that binding Fifth Circuit precedent forecloses Defendant's arguments regarding the unconstitutionality of 18 U.S.C. § 922(g)(1), the undersigned issues this recommendation without a hearing.

## III. Analysis

Again, Defendant is under indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  This statute makes it unlawful "for any person – who has been convicted in a court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  Defendant's motion argues his indictment must

be dismissed because the statute is unconstitutional under the Second Amendment and the standard set forth by the Supreme Court in *Bruen* and also violates the Commerce Clause. Both of these arguments fail to provide a basis for the Court to dismiss the indictment in this case.

**A.      Defendant has not established that his indictment violates the Second Amendment.**

The Second Amendment dictates that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court held that the Second Amendment confers an individual, as opposed to collective, right and ushered in a period of contemporary jurisprudence on the right to bear arms. *Dist. of Columbia v. Heller*, 554 U.S. 570, 580 (2008). Post-*Heller*, the Fifth Circuit adopted a two-step inquiry for analyzing laws that might infringe on the Second Amendment. *See Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). Under this rubric, courts would first ask whether the conduct at issue fell within the scope of the Second Amendment right to bear arms, evaluating "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012). If the burdened conduct fell outside the scope of the Second Amendment, then the law was constitutional, and the inquiry was over. *Id.* at 194–95. If the burdened conduct fell within the scope of the Second Amendment, courts would proceed to step two, where they would determine whether to apply strict or intermediate scrutiny, depending on the nature of the conduct being regulated and the degree to which the challenged law burdens the individual Second Amendment right. *Id.* at 195. This second part of the test became known as means-end scrutiny. *Id.*

Both before and after *Heller*, the Fifth Circuit has repeatedly upheld 18 U.S.C. § 922(g)(1)—the statute challenged here—against Second Amendment challenges. *See United*

*States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (citing *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003)).  The Fifth Circuit has long recognized that "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms," *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), and that "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment," *Darrington*, 351 F.3d at 634.  *See also Everist*, 368 F.3d at 519 ("It is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms.").  The Fifth Circuit has again and again determined that arguments regarding the unconstitutionality of Section 922(g)(1) are foreclosed by the Circuit's existing precedent.  *See Scroggins*, 599 F.3d at 451.  In *Heller*, the Supreme Court reinforced the position that felons do not enjoy the same Second Amendment protections as other Americans (albeit in dicta), explicitly noting that its holding that the Second Amendment confers an individual right should not "be taken to cast doubt on long-standing prohibitions on possession of firearms by felons."  554 U.S. at 626.

       The Supreme Court subsequently issued its decision in *Bruen*.  The decision repudiated the two-step approach embraced by the Fifth Circuit and other circuit courts of appeals post-*Heller*.  In doing so, the Supreme Court explained that "[s]tep one of the predominant framework is broadly consistent with *Heller*," as it "demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127.  However, according to the Supreme Court, *Heller* did not support the second step of the framework—means-end scrutiny—because it allowed courts to balance Second Amendment protections with governmental interests and policy considerations.  *Id.*  The Supreme Court instead held that, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the Government

4

bears the burden to affirmatively prove that "its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126–27. In other words, lower courts evaluating the constitutionality of firearms regulation post-*Bruen* must focus solely on the text of the Second Amendment and "the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

Since *Bruen*, the Fifth Circuit has not addressed a renewed constitutional challenge to Section 922(g)(1).[1] However, numerous district courts in the Fifth Circuit facing constitutional challenges to Section 922(g)(1) post-*Bruen* have rejected arguments that *Bruen* calls the Fifth Circuit's long line of precedent into question. *See, e.g.*, *United States v. Grinage*, No. 5:21-CR-00399-JKP, 2022 WL 17420390, at *8 (W.D. Tex. Dec. 5, 2022) ("[T]he *Bruen* decision does not constitute an intervening change in law which renders § 922(g)(1) unconstitutional either facially or as applied . . . ."); *United States v. Jonathan Gladem*, SA: 20-CR-00269-XR, Docket No. 57 ("Felons are not covered under the plain text of the Second Amendment, which affords protection only to the political community. Even if they were covered, felon-in-possession statutes are within our historical tradition of firearm regulation."); *United States v. Raushaun Harris*, SA: 21-CR-

---

[1] The undersigned notes that the Third and Seventh Circuits have issued opinions post-*Bruen* on the constitutionality of Section 922(g)(1). The Seventh Circuit upheld Section 922(g)(1) against an as-applied challenge to a defendant who had been previously convicted of attempted murder, a violent crime. *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022). The Seventh Circuit stated it would be "frivolous" to argue that "someone in the defendant's position historically had the right to possess a gun" and "whether a government can forbid *violent* felons from possessing a firearm has not been meaningfully questioned by courts to date." *Id.* (emphasis in original).

The Third Circuit faced a very different as-applied challenge by a defendant who had been previously convicted of making a false statement to obtain food-stamp assistance, a non-violent crime. *Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023). Applying *Bruen*, the Third Circuit determined that a non-violent felon like the defendant would have been considered part of "the people" covered by the Second Amendment and declared Section 922(g)(1) unconstitutional as applied to the defendant. *Id.*

00328-XR, Docket No. 59 ("The Supreme Court's opinion in *Bruen* did not reverse or question its earlier writings in *Heller* on the permissible limitations that could be imposed on the Second Amendment."); *United States v. Collette*, No. MO:22-CR00141-DC, 2022 WL 4476790, at *7 (W.D. Tex. Sept. 25, 2022) ("[T]his Nation has a historical tradition of excluding felons and those who abuse their rights to commit violence from the rights and powers of 'the people.' Consistent with *Heller's* definition, if groups have been categorically excluded under other constitutional provisions bestowing rights to 'the people,' logic demands that society could also exclude those groups from under the Second Amendment.").

Defendant argues that, despite this precedent, this Court should invalidate Section 922(g)(1) as unconstitutional. The primary basis for this argument is the Fifth Circuit's 2023 decision in *United States v. Rahimi*, in which the Fifth Circuit held that Section 922(g)(8), a related statute regulating firearm possession by a person subject to a domestic violence restraining order, is unconstitutional because it unlawfully infringes on the right of such persons to bear arms under the Second Amendment. 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). In reaching this conclusion, the Fifth Circuit disregarded two of its prior precedents upholding Section 922(g)(8) against Second Amendment challenges. *See United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020); *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001). The Fifth Circuit reasoned that *Bruen* had implicitly abrogated both of these decisions because *Bruen* "fundamentally changed our analysis of laws that implicate the Second Amendment, . . . rendering our prior precedent obsolete." *Rahimi*, 61 F. 4th at 450–51. Post-*Rahimi*, some district courts have concluded that all pre-*Bruen* precedent is no longer good law. *See, e.g.*, *United States v. Connelly*, No. EP-22-Cr-229(2)-KC, 2023 WL 2806324, at *3 (W.D. Tex. Apr. 6, 2023).

6

Defendant asks the Court to follow suit, disregard the Fifth Circuit's long line of precedent finding Section 922(g)(5)(A) constitutional, and engage in a historical analysis of the regulation of the right of felons to bear arms as if it were a matter of first impression in this Circuit.  Yet the Fifth Circuit is bound by the precedent of previous panels absent an intervening Supreme Court decision or a subsequent *en banc* decision.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999).  And, of course, this Court is bound by Fifth Circuit precedent.  *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 442 (5th Cir. 2000).  Although the Fifth Circuit in *Rahimi* indisputably stated (in the context of challenge to a different firearm statute) that all pre-*Bruen* precedent on the Second Amendment is obsolete, *Rahimi* was not an *en banc* decision.  Defendant's argument that Fifth Circuit precedent on the felon-in-possession statue was implicitly overruled by *Bruen* is not persuasive either.  *Rahimi* itself appears to foreclose this argument, as the Fifth Circuit in that decision reiterated the longstanding tradition of regulating firearm possession for convicted felons. 61 F.4th at 452 ("Rahimi was not a convicted felon or otherwise subject to another 'longstanding prohibition[] on the possession of firearms' that would have excluded him.").

Moreover, as noted above, governing Fifth Circuit precedent upholding the constitutionality of the felon-in-possession statute rests on the reasoning embraced by *Heller* and reflected in the step-one analysis—that felons fall outside the protections of the Second Amendment as historically understood.  *See Scroggins*, 599 F.3d at 451 (recognizing the longstanding precedent that criminal prohibitions on felons possessing firearms does not violate the Second Amendment); *Darrington*, 351 F.3d at 633–34 (recognizing that Fifth Circuit precedent on the felon-in-possession statute has reasoned that "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear

arms protected by the Second Amendment"). *See also Emerson*, 270 F.3d at 260 n.61 ("[O]nce an individual is convicted of a felony, he has by his criminal conduct taken himself outside the class of law-abiding citizens who enjoy full exercise of their civil rights."). The majority of these cases therefore did not engage in the prohibited means-end balancing of interests prohibited by the Supreme Court in *Bruen*.

True, some of the precedent on Section 922(g)(1) in this Circuit references language used in means-end scrutiny, such as calling the statute a "limited and narrowly tailored exception" to the Second Amendment. *See, e.g.*, *Everist*, 368 F.3d at 519. In *Everist*, the Fifth Circuit arguably engaged in the repudiated step-two balancing analysis, though a rather cursory one, reasoning that those who have shown "manifest disregard for the rights of others" may not complain of limitations on their right to bear arms, as their possession of firearms "would otherwise threaten the security of [their] fellow citizens." *Id.* at 519. However, even if this one case were implicitly abrogated by *Bruen*, nothing in *Bruen* or *Rahimi* invalidates the reasoning in the other Fifth Circuit cases preceding *Everist*, which did not. Until the Fifth Circuit specifically finds that convicted felons are included in the definition of "the people" in the Second Amendment and regulating their possession of firearms is not within the historical tradition surrounding the Second Amendment, this Court must follow the well-established precedent in this Circuit upholding Section 922(g)(1) as constitutional.

In following binding Fifth Circuit precedent on the constitutionality of Section 922(g)(1), the undersigned is not independently endorsing the correctness of the underlying conclusion drawn by the courts in these cases—that there is, in fact, a longstanding historical tradition of prohibiting gun ownership by felons. If the Fifth Circuit or Supreme Court (which has granted *certiorari* in *Rahimi*) ultimately clarify that all pre-*Bruen* precedents are overruled, even those whose holdings

8

rest on the step-one analysis, then it is plausible, or even likely, that this Circuit will conclude that even Section 922(g)(1) is unconstitutional. Some district courts in this Circuit, taking *Rahimi* to mean that all pre-*Bruen* Second Amendment precedents are overruled, have already begun to tackle a deeper historical analysis of laws prohibiting gun ownership by felons, both violent and non-violent, at the time of the ratification of the Second Amendment and have concluded that the government cannot show that such prohibitions actually were "part of the historical tradition of regulating firearms possession." *See, e.g.*, *United States v. Bullock*, --- F. Supp. 3d ---, 2023 WL 4232309 (S.D. Miss. June 28, 2023) (internal citation and quotation omitted).

But because the undersigned concludes that this Court is bound by a well-established line of Fifth Circuit precedent on Section 922(g)(1) that does not directly conflict with *Bruen*, this Court is required to adhere to that precedent until the Fifth Circuit or Supreme Court dictates otherwise. To find that *Rahimi* stands for the proposition that all pre-*Bruen* Fifth Circuit precedent on the Second Amendment is overruled—regardless of the bases of those decisions' holdings—would not only run afoul of the Fifth Circuit's rule of orderliness, it would mean that every Second Amendment challenge filed by a defendant charged with a firearms offense would require the court to conduct a historical analysis, evaluate disputed historical evidence, and consider competing expert testimony. Explicit clarification from a higher court is required before such a monumental expenditure of judicial and party resources is incurred.

In summary, this Court lacks authority to revisit whether convicted felons are a part of "the people" in the Second Amendment or a part of the longstanding tradition of firearms regulation in this country, as this question has already been decided in this Circuit. Nothing in the Supreme Court's decision in *Bruen* or the Fifth Circuit's decision in *Rahimi* dictates otherwise. The Court should therefore reject Defendant's facial challenge to Section 922(g)(1). As for Defendant's as-

applied challenge, to prevail, he must show that the application of the challenged statutes to the facts of his case would violate his constitutional rights. *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022). For the same reasons, he cannot do so. Defendant's motion to dismiss the indictment based on a Second Amendment violation therefore must be denied.

**B.      Defendant has not established that his indictment violates the Commerce Clause.**

Defendant asserts that the enactment of Section 922(g)(1) exceeded Congress's authority under the Commerce Clause. The Commerce Clause provides that Congress has the power "[t]o regulate commerce with foreign nations, and among the several states. U.S. Const. art. I, § 8, cl. 3. Section 922(g)(1) has three requirements: "(1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997). Defendant argues that the Government fails to show that the possession of a firearm substantially affects interstate commerce, citing the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995) and *Jones v. United States*, 529 U.S. 848 (2000). This argument is also foreclosed by binding Fifth Circuit precedent.

In *Lopez*, the Supreme Court affirmed the Fifth Circuit's holding that 18 U.S.C. § 922(q), which criminalized possession of a firearm within a specified proximity to a school, exceeded the power of Congress to legislate under the Commerce Clause. 514 U.S. at 551–68. The Supreme Court reasoned that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567. Central to the Supreme Court's decision in *Lopez* was the fact that Section 922(q) had no jurisdictional element ensuring, through a case-by-case inquiry, that the firearm possession in question affects interstate commerce. *Id.* at 549.

10

Following *Lopez*, the Fifth Circuit reconsidered whether Section 922(g)(1), the felon-in-possession statute at issue here, violated the Commerce Clause.[2] *See United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996). The Fifth Circuit joined all other circuits addressing the issue post-*Lopez* to hold that the reasons for finding Section 922(q) unconstitutional were inapplicable to Section 922(g)(1). *Id.* at 242.

Thereafter, the Supreme Court issued its decision in *Jones*, which considered whether arson of an owner-occupied private residence falls within the federal arson statute, 18 U.S.C. § 844(i). 529 U.S. at 850–51. The Supreme Court, relying on reasoning from *Lopez*, held that the arson statute only covers property currently used in commerce or in an activity affecting commerce, not the family dwelling at issue and vacated the defendant's conviction. *Id.* at 858. Since *Jones*, the Fifth Circuit has repeatedly reconsidered whether Section 922(g)(1) exceeds Congress's authority under the Commerce Clause and has found that longstanding precedent forecloses the argument. *See United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) ("[W]e are bound by our prior precedents and conclude that this issue is foreclosed."); *United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007) (holding that the Court's decisions in *Lopez* and *Jones* "do not alter th[e] conclusion" that Section 922(g)(1) is constitutional); *Darrington*, 351 F.3d at 634 (relying on prior precedent to reject Commerce Clause challenge); *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001) ("[T]he constitutionality of § 922(g) is not open to question."). Based on longstanding Fifth Circuit precedent, the Court should deny Defendant's motion to dismiss based on a violation of the Commerce Clause.

### IV. Conclusion and Recommendation

---

[2] Prior to *Lopez*, the Fifth Circuit had rejected such arguments. *See United States v. Segeada*, No. 95-40430, 74 F.3d 1237 (5th Cir. Nov. 30, 1995) (unpublished).

Having considered Defendant's motion, the Government's response [#31], and the governing law, the undersigned recommends that Defendant's Motion to Dismiss Indictment [#38] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 16th day of August, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE